1

2

3

4

5

6

7

8                          **IN THE UNITED STATES DISTRICT COURT**

9                      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MARGARITA ROSALES and ANGELICA )        1:09-cv-00707-AWI-JLT
     ROSALES, on behalf of themselves and all )
12   others similarly situated,                )        ORDER GRANTING IN PART AND DENYING
                                                )        IN PART PLAINTIFFS' MOTION TO STRIKE
13                          Plaintiffs,         )        CLASS MEMBER DECLARATIONS
                                                )        SUBMITTED IN SUPPORT OF
14          v.                                  )        DEFENDANT'S OPPOSITION TO CLASS
                                                )        CERTIFICATION
15                                              )
     EL RANCHO FARMS and DOES 1-20,             )        (Doc. 42)
16                                              )
                            Defendants.         )
17   _____ )

18
            Plaintiffs Margarita Rosales and Angelica Rosales ("Plaintiffs") seek to strike the class
19
     member declarations filed in support of Defendant's opposition to class certification.  (Doc. 42).
20
     Defendant filed an opposition to the motion on November 23, 2011 (Doc. 48), to which Plaintiffs
21
     filed a reply on November 30, 2011 (Doc. 49).
22
            Having read and considered the arguments of counsel at the hearing on December 7, 2011,
23
     the motion to strike is **GRANTED IN PART AND DENIED IN PART**.
24
     **I.   Factual and Procedural History**
25
            On April 20, 2009, Plaintiffs filed a class action complaint for the following: violation of the
26
     Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq*; failure to pay wages; failure to pay
27
     reporting time wages; failure to provide rest and meal periods; failure to pay wages of terminated or
28

                                              1

1   resigned employees; knowing and intentional failure to comply with itemized employee wage

2   statement provisions; penalties under Labor Code § 2699, *et seq*; breach of contract; and violation of

3   unfair competition law.  (Doc. 1).  Plaintiffs brought the action "on behalf of Plaintiffs and members

4   of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler

5   employees employed, or formerly employed, by each of the Defendants within the State of

6   California."  *Id.* at 4.

7       Plaintiffs filed a motion for class certification on September 9, 2011.  (Doc. 33).  Defendant

8   filed an opposition on October 21, 2011, with declarations of over 80 putative class members filed in

9   support of the opposition.  (Doc. 40).  Plaintiffs filed this motion to strike the class declarations

10  (Doc. 42), and the Court heard argument regarding the motion to strike concurrently with the motion

11  for class certification on December 7, 2011.

12  **II.   Admissibility of declarations**

13      In conjunction with a Rule 23 class certification motion, the Court may consider all material

14  evidence submitted by the parties to determine Rule 23 requirements are satisfied.  *Blackie v.*

15  *Barrack*, 524 F.2d 891, 901 (9th Cir. 1975); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337

16  (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may not

17  be admissible at trial.")   Accordingly, declarations may be used to support or oppose a motion where

18  presented in writing, subscribed as true under penalty of perjury, and dated.  28 U.S.C. § 1746.

19  **III.  Plaintiffs' motion to strike**

20      The declarations provided by Defendant in opposition to the motion for class certification

21  were formatted as 16 "yes or no" questions, with a space for each declarant to indicate a response.

22  Plaintiffs assert that "the declarations were coercively and improperly gathered and are deficient and

23  unreliable.  (Doc. 42 at 2).  In addition, Plaintiffs assert the class member declarations are internally

24  contradictory and contradict other evidence.  (*Id.* at 7-8).  Finally, Plaintiffs argue the "declarations

25  are riddled with evidentiary issues."  (*Id.* at 11).

26      Plaintiffs assert the "workers were told by declaration-gatherers to submit their incomplete

27  declarations because the declaration-gatherer would fill in the remaining portions of the declarations

28  for them."  (Doc. 42 at 5).  Therefore, Plaintiffs conclude the declarations gathered by Defendant

1  were "coercive" and "in many cases, clearly fraudulent." (*Id.*)  In support of these assertions,

2  Plaintiffs submit declarations from Juana Cruz and Martina Garcia.  (Sutton Decl., Exhs. 1-2).

3       Ms. Cruz reported her foreman (Mariano) gave her the form declaration "and said that [she]

4  had to fill out the declaration." (Cruz Decl. ¶ 3).  The next day, Ms. Cruz was asked for her

5  declaration, but informed the note taker, Estela, that she had not finished.  (*Id.* at ¶ 5).  Ms. Cruz

6  reported,

> 7  The note taker asked me to sign it and that she was going to fill it out for me, because she
> needed it immediately.  I signed the incomplete declaration and I gave it to the notetaker.
> 8  I watched while the note taker asked other workers to sign their declarations which were
> also not complete.
>
> 9

10  *Id.*  Ms. Cruz testified she was not informed the declaration could be used against her interests or that

11  she could be waiving her right to unpaid wages.  (*Id.* at ¶ 4).

12       Likewise, Ms. Garcia reported she was given a declaration by Mariano "and asked . . . to fill

13  out the declaration and sign it." (Garcia Decl. ¶ 3).  Ms. Garcia testified, "There were many

14  questions that I didn't understand it.  I filled out the parts that I understood and I signed the

15  declaration.  (*Id.*)  However, "[s]ome days later," she was given another declaration and "only asked .

16  . . to sign it." (*Id.* at ¶ 5).  Ms. Garcia stated the declaration was the same as the first time, but she

17  was not given time to read it before signing and turning in the declaration.  (*Id.*)  Ms Garcia reported

18  she observed Estela "fill[] out some of the declarations for the workers." (*Id.* at ¶ 6).  Both

19  declarants assert, "I was not informed that this declaration could be used against my interest or that I

20  could be waiving my rights to unpaid wages." (Garcia Decl. ¶ 4; Cruz Decl. ¶ 4).

21  **IV.  Defendant's opposition**

22       Defendant contends field workers were not forced to sign the declarations, and misleading

23  statements were not made to crew members in gathering the declarations.  (Doc. 48 at 2).  According

24  to Defendant, the following procedure was implemented to gather the declarations:

> 25  On approximately September 8, 2011, Garza submitted to its employees declaration
> forms that consisted of "yes or no" questions.  Crew foremen asked employees to
> 26  respond to the yes or no questions and then return the completed and signed declarations
> in the morning. [Citations.]
>
> 27
>
> 28  The declarations were returned the next morning and delivered to the office staff at
> Garza.  Several of the declarations had been signed, but . . . there were no responses to

1
2
3
4

the questions.  Accordingly, Irma Garza tasked her office assistance, Gloria Moreno and Maria Carmona, with going to El Rancho Farms and returning the incomplete declarations to the employees who had signed them. [Citations.] On September 9, 2011, Ms. Moreno and Ms. Carmona went to El Rancho Farms.  [Citations.]  Ms. Moreno and Ms. Carmona split up the declarations between themselves and met with the employees. [Citation.] Estela had no declarations, and to the knowledge of both Ms. Moreno and Ms. Carmona, did not speak with the crew members regarding the incomplete declarations. [Citation.]

5
6
7
8

At the tables, Ms. Moreno and Ms. Carmona spoke with the crew members and asked them to complete the declarations.  Some crew members completed them and then returned them to Ms. Moreno or Ms. Carmona. [Citations.]  Other crew members asked that Ms. Moreno or Ms. Carmona read the questions in the declarations to them and mark their verbal responses.  [Citations.]  Ms. Moreno and Ms. Carmona read the questions one-by-one, checking yes or no as prompted by the employee… [Citation.]

9   (Doc. 48 at 2-3) (internal citations omitted).  Therefore, Defendant argues that "[t]here were no

10   misrepresentations or misleading statements made to the field workers." (*Id.* at 2).

11   Defendant notes that Garza Contracting downsized its crew at El Rancho to fifteen field

12   workers.  Of these, seven remained who had submitted declarations opposing the motion for class

13   certification.  (Doc. 48 at 4).  Defendant asserts Fernando Lopez, a neutral third party "went to the

14   fields of El Rancho Farms and interviewed the seven field workers who signed the Class

15   Certification Declarations" on November 18 and 21, 2011.  (*Id.* at 4).  Mr. Lopez informed the field

16   laborers of the following:

17
18
19

a.   There is a lawsuit pending against El Rancho Farms for what plaintiffs claim are violations of field workers' employment rights, including that field workers have been forced to purchase their own tools, have been denied meal and rest periods, and have been forced to work off the clock without pay.

19
20

b.   Three crew members claimed that they had not personally filled out the Class Certification Declarations and were simply ordered to sign them.

21
22
23

c.   El Rancho Farms asks that the field laborers come forward and state honestly whether they personally filled out their own declarations and whether they were threatened with discipline or termination if they failed to respond to the questions in a certain manner or refused to sign the declarations.

23
24
25

d.   If the field laborers did in fact personally fill out their declarations and answered honestly without fear of being reprimanded or disciplined by their employer, El Rancho Farms asks that they sign a new statement that says so.

25
26
27

e.   There would be no adverse action taken against them if they did not wish to sign the new declarations, and they would not be terminated, reprimanded or disciplined.

27
28

f.   This declaration and the previous declaration would be used by El Rancho Farms in the law suit pending against it.

4

1    (Doc. 48 at 4-5) (citing F. Lopez Decl. ¶ 8).  Each declarant testified that the crew foremen handed

2    out the declarations and "told the farm workers to take them home, read them, answer them, sign

3    them, and return them the next morning;" and the foremen did not threaten the workers with

4    termination or other disciplinary measures for failure to sign the declarations.  (*Id*. at 5).  Further, the

5    declarants asserted the foremen did not "coach" the workers on how to answer questions, which they

6    answered personally, honestly, and to the best of their abilities.  (*Id.*)

7        As a result, Defendant concludes the class declarations should not be stricken because

8    improper actions were not taken by Garza Contracting or Defendant.  (*Id.* at 8-10).

9    **V.  Plaintiffs' Reply**

10       Plaintiffs argue the new declarations do not cure Defendant's failure to notify the declarants

11   of the litigation at the time class members submitted declarations in September.  (Doc. 49 at 1-2).

12   Plaintiffs note the new declarations do not make any assertion that the original declarants were

13   informed of the pending litigation, and argue the failure to specify when this information was

14   disclosed "is fatal" to the declarations.  (*Id.* at 3) (citing *Arrendondo v. Delano Farms*, 2011 U.S.

15   Dist. LEXIS 44134 (E.D. Cal. Apr. 19, 2011).

16       In addition, Plaintiffs assert, "[D]espite the requirements of Rule 26 and this Court's prior

17   discovery order to produce the names and contact information of the class members [citation],

18   Defendant has willfully and in bad faith refused to produce class member contact information."  (*Id.*

19   at 1) (internal citations and emphasis omitted).  According to Plaintiffs, Defendant refused to

20   produce the contact information for the individuals who offered declarations in opposition to the

21   motions for class certification and to strike declarations.  (*Id.* at 5).

22   **VI.   Discussion and Analysis**

23       A.   Disclosure of witness information pursuant to Rule 26

24       As an initial matter, Plaintiffs raised an issue that Defendant failed to disclose witness

25   information pursuant to Rule 26.  Significantly, discovery disputes "pursuant to Fed. R. Civ. P. 26

26   through 37" cannot be raised before the Court without the parties meeting and conferring in a good

27   faith effort to resolve the issues.  Local Rule 251(b); Fed.  R. Civ. P. 37(a)(1).  Further, the parties

28   were warned: "**Counsel must . . . comply with Local Rule 251 with respect to discovery disputes**

1   **or the motion will be denied without prejudice and dropped from calendar**." (Doc. 21 at 7)

2   (emphasis in original). Significantly, the parties have not met and conferred regarding this issue, and

3   Plaintiffs have not filed a formal motion regarding the alleged failure of Defendant to comply with

4   the disclosure requirements Rule 26. Accordingly, the Court will not rule on or address further the

5   alleged failure to comply with disclosure requirements.

6        B.   Method by which declarations were obtained

7        Plaintiffs argue the Court should strike the declarations due to the misleading and "coercive

8   means" by which they were obtained. (Doc. 42 at 4). According to Plaintiffs, "Pre-certification

9   communications with putative class members may be misleading, coercive, or improper, particularly

10  in an employer-employee relationship, where an employee might feel a strong obligation to

11  cooperate with her employer, or feel compelled to sign a declaration in order to keep her job." (*Id.*)

12  (citing *Mevorah v. Wells Fargo Home Mortg.*, 2005 U.S. Dist. LEXIS 28615, 2005 WL 4813532

13  (N.D. Cal. Nov. 17, 2005); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202-03 (11th Cir.

14  1985); *Belt v. Emcare Inc.*, 299 F.Supp.2d 664, 667 (E.D. Tex. 2003)). Plaintiffs argue,

15  "Declarations obtained from an employee for use in litigation without informing the employees of

16  the existence of the class litigation or the possible consequences of signing a declaration should be

17  stricken." (Doc. 42 at 6) (citing *Longcrier v. HL-A Co., Inc.*, 595 F.Supp.2d 1218, 1230 (S.D. Ala.

18  2008).

19       In *Mevorah*, the court examined pre-certification communications by the defendant to

20  potential class members. *Id.*, 2005 U.S. Dist. LEXIS 28615, at *10. The defendant, through

21  counsel, contacted employees via telephone and informed them the phone call was related to the

22  action, but mischaracterized the nature of the litigation while soliciting declarations. *Id.* at *12-14.

23  The court noted this appeared to violate obligations of a corporation's attorney under California Rule

24  of Professional Conduct 3-600 and observed, "The opportunity for mischief is compounded by the

25  relationship between the employer and the employee and the coerciveness an employee may feel."

26  *Id.* at *14-15, 17.

27       Likewise, when the Eleventh Circuit struck declarations of putative class members in

28  *Longcrier*, counsel for the defendant "engaged in conduct that would reasonably be expected to

mislead and deceive the prospective plaintiffs concerning the nature, purpose and implications of their participation in the declaration process." *Longcrier*, 595 F.Supp.2d at 1228. Specifically, declarants were called into meetings with counsel, who informed the declarants that the company "was conducting a survey," and "covertly concealed" the fact that the lawsuit was pending. *Id.* at 1227-28. The court observed:

> [T]he court file establishes a clear record of abusive communication by [the defendant] to prospective opt-in plaintiffs. Knowing that this lawsuit was pending and that it was styled as a § 216(b) opt-in proceeding, Defendant called each of its hourly workers into a one-on-one meeting during work hours with its attorney(s), creating an inherently coercive and intimidating environment for interviews and execution of paperwork concerning pay practices. Defendant's attorneys asked general questions about pay practices and placed a largely form document in front of each employee to be signed. While that inherently coercive setting is not itself grounds for relief, Defendant's misleading statements to these potential plaintiffs about the reasons for the interview and the declaration process, and their suppression of the truth, were obviously designed to lull prospective plaintiffs into a false sense of security and to effectuate their complete cooperation with minimal resistance. Such manipulation of unrepresented parties to secure [d]eclarations that [the defendant] now uses for the purpose of preventing the very people it mislead from being able to litigate their FLSA rights herein is improper.

*Id.* at 1229. Though striking the affidavits, the Court held,

> To be clear, **the Court does not find that HL-A was not permitted to meet with its employees, to ask them questions about the issues animating this lawsuit, or to request that they sign declarations. In general, such communications are entirely permissible and appropriate**. But when HL-A's attorneys expressed misleading half-truths to these employees about the raison d'etre for the meetings and declarations, they crossed a clear line demarcated in Gulf Oil and its progeny. It is that aspect of Defendant's conduct for which sanctions and restrictions are warranted.

*Id.* at 1229, emphasis added.

Here, a form document was used to obtain declarations from unrepresented employees of Garza Contracting. There the similarities with the cited cases end. Significantly, neither Defendant nor its attorneys communicated with the declarants directly. Meetings did not occur on a one-on-one basis. Though the declarants were not informed of the lawsuit, declarants were not *mislead* by any explicit representations by Defendant. Further distinguishing this case from *Mevorah* and *Longcrier* is the fact that declarations were not obtained by Defendant from its employees, but rather by Garza Contracting, from its employees. Consequently, it does not appear Defendant engaged in "misleading" communications with the putative class members, and neither *Mevorah* nor *Longcrier* are analogous to the facts currently before the Court.

7

In *Kleiner*, the Eleventh Circuit considered whether the defendant's communications with putative class members was improper after the defendant "secretly solicit[ed] exclusion requests from potential members of a Rule 23(b)(3) plaintiff class." *Kleiner*, 751 F.2d at 1196. The court concluded the defendant's opt-out campaign violated protective and class notice orders in place, and the actions taken by the defendant were illegal. *Id.* at 1200. Because Plaintiffs do not argue Defendant violated a court order and the class had already been certified, this case is not instructive on the matter now pending before the Court.

Finally, the court in *Belt* examined communications made by the defendant in a representative action where the defendant unilaterally mailed a letter to absent class members before the court-approved class notice was sent. *Belt*, 299 F.Supp.2d at 666. The letter "misrepresented many issues in the action," such equating the "wage claim with a malpractice suit" and "attempt[ed] to frighten class members from joining the action." *Id.* at 666, 668. Further, the court found the letter was coercive because the defendant "exploited [its employment] relationship by preying on fears and concerns . . . and by suggesting that this action could affect the potential class members' employment." *Id.* at 669. Here, Defendant did not attempt to frighten potential class members or suggest the action could affect the employment of declarants. Therefore, it does not appear the method by which declarations were obtained was coercive.

Though Plaintiffs assert "it is the act of *omitting* the critical and required notices that is utterly misleading and ultimately coercive," (Doc. 49 at 3), Plaintiffs cite no authority for this assertion, and the Court has located none. Notably, the cases cited do not hold a party is required to provide notice of a lawsuit prior to communicating with potential class members. Rather, "[i]n a Rule 23 class action, pre-certification communication from the defense is generally permitted." *Parks v. Eastwood Ins. Services, Inc.*, 235 F.Supp.2d 1082, 1084 (C.D. Cal. 2002); *Longcrier*, 595 F.Supp.2d at 1229 (Pre-certification contact by the defense to obtain declarations is "entirely permissible and appropriate."). Accordingly, request to strike the declarations on the grounds of improper communications or the method used to obtain the declarations is **DENIED**.

///

///

8

C.  Submission of incomplete declarations to Garza

Plaintiffs assert some workers submitted incomplete declarations, which were submitted to the Court as complete documents.  For example, Ms. Cruz and Ms. Garcia reported they submitted incomplete declarations, which were filed by Defendant in support of their opposition as completed, and observed the declarations of others being completed by "notetakers."  However, neither Ms. Cruz nor Ms. Garcia identify the questions they did not complete.  Though they report that they were presented with the declaration again several days later and were not allowed to review it before they signed it, after now having had the time to review it with counsel, they do not even hint that the declaration had been altered in any way or was false in any respect.  Therefore, their declarations will not be stricken.

With regard to the declarations of others, Defendant admits that several documents submitted were incomplete at the time they were returned to Garza Contracting.  Therefore, according to Garza employees Ms. Moreno and Ms. Carmona, they went to the field to obtain missing responses.  Ms. Moreno reported, "I spoke with the employees and told them that they had not filled out the responses entirely.  Some employees filled out their declarations then and there and returned them to me.  Some other employees asked that I read the questions in the declarations to them and mark their verbal responses.  For those employees, I read each question one-by-one, checking yes or no as prompted by the employee."  (Moreno Decl. ¶¶ 4-5).  Ms. Carmona reported the same.  (Carmona Decl. ¶¶4-5).  Thus, Defendant has provided a reasonable explanation as to why "notetakers" were observed writing on the declarations.  As a result, Plaintiffs' request to strike declarations on the basis that Garza employees were seen completing some declarations of unidentified field workers is **DENIED**.

D.  Compound questions

Plaintiffs argue, "Questions 14 and 16 seek simple 'yes' or 'no' responses, even though both pose multiple questions or statements to declarants."  (Doc. 42 ac 12) (footnotes omitted).  Specifically, the statements to which Plaintiffs object provide:

14. Has Garza Contracting, Inc. ever provided you with an itemized wage statement that inaccurately reflects your hours worked, applicable rates of pay, pay period dates, piecework units earned, gross wages, withholdings, deductions, and/or net wages?

16.  At all times during my employment, I understood that I was entitled to one 10-minute break for every 4 hours that I worked, and that I was entitled to take the 10-minute rest break as closet o [sic] the middle of the 4-hour work period as practical. For days on which I worked 7 hours or more, I voluntarily opted to take a consolidated 20-minute rest period in the afternoon rather than two separate 10-minute rest periods.

(Doc. 42 at 12, n. 5-6).

The Court agrees "Question 14" is compound, and the request to strike the declarants' responses thereto is **GRANTED**. Notably, "Questions 16" does not ask a question; it seeks confirmation of facts.  In any event, it seeks confirmation of more than one fact assertion.  Thus, though "Question 16" contains more than one factual assertion, when considered in conjunction with other admissible evidence, any ambiguity in the response is mitigated.  Review of the totality of the evidence clarifies that an affirmative response supports the custom for taking the meal period in the morning followed by an extended rest period in the early afternoon–which all parties agree occurred from late 2007 or early 2008.  Whether the employee knew of the entitlement to a rest break for every four hours worked, is irrelevant to the Court's analysis here.  With this clarification, the request to deny responses to this statement is **DENIED**.

E.   "Contradictions" in testimony

Plaintiffs assert, "Defendant's formulaic class member declarations are also unreliable as they are internally contradictory and they contradict Defendant's Persons Most Knowledgeable (PMK) testimony and supervisor declarations submitted in opposition to Plaintiff's Motion for Class Certification." (Doc. 42 at 7-8).  First, Plaintiffs note a majority of Defendant's class member declarants responded "no" to the following questions: (1) Have you ever worked more than 4 hours without receiving a 10-minute rest break? (2) Have you ever worked more than 5 hours without receiving a 30-minute meal break?  (*Id.* at 8-9).  Plaintiffs assert that because work commenced between 6:00 a.m. and 7:00 a.m., and a consolidated rest period was given at 12 p.m., "field laborers at El Rancho Farms since approximately 2008 work more than 4 hours without receiving a 10-minute rest break."  (*Id.* at 8).  In addition, Plaintiffs assert that "it is clear that between 2000 and 2008 field laborers worked more than five hours without receiving a thirty-minute meal break, as they started between 6:00 and 7:00 a.m. and received their meal break at 12:00 p.m."  (*Id.* at 9).

10

1      Regardless of any alleged contradictions in the evidence, this is not an issue of admissibility,

2  but rather an argument as to the proper *weight* to be given to the evidence.  Accordingly, Plaintiffs'

3  motion to strike the declarations due to internal inconsistencies is **DENIED**.

4      <u>F.   Date of execution</u>

5      Plaintiffs assert Defendant submitted declarations that failed to include a date of execution.

6  (Doc. 42 at 14).  Specifically, Plaintiffs assert the following individuals failed to identify a date on

7  their declaration: Irma Gallardo, Gilberto Lopez, Julio Perez, Rafael Hernandez, Rafael Valencia,

8  Jose Arellano, Lucia Cortez, Guillermo Tinoco, Patricia Gallardo, Amparo Juarez, Fabiola Morales,

9  Angel Lopez Cruz, Teresa Moreno, Eugenio Antonio Cruz, and Federico Tinoco.  In addition, the

10  Court notes the declaration of Miguel Nunez is not dated.  For a declaration to be admissible before

11  the Court, it must be dated.  *See* 28 U.S.C. § 1746 (requiring a declaration to be made "in writing of

12  such person which is subscribed by him as true and under penalty of perjury, and dated").

13  Accordingly, Plaintiffs' request to strike the undated declarations is **GRANTED**.

14      <u>G.  Legal Conclusions</u>

15      Plaintiffs assert the questions set forth in the declaration "consistently call for a legal

16  conclusion," because review of the declarations demonstrates "it is evidence that employees were not

17  given definitions of simple, but important words, such as 'work. . .'" (Doc. 42 at 11).  Thus, it

18  appears Plaintiffs' objection is not that the declarants made legal conclusions, but rather that the

19  terms and phrases used were vague and ambiguous.  However, Plaintiffs failed to further analyze the

20  "legal conclusions" proffered in the declarations, and the Court will not speculate as to the questions

21  Plaintiffs objected to on this basis.  Therefore, Plaintiffs' request to strike the declarations on the

22  basis of legal conclusions is **DENIED**.

23  **VII.  Request for additional discovery**

24      In the event that the Court denied Plaintiffs' request to strike the class member declarations,

25  Plaintiffs "request the Court permit additional discovery so that Plaintiffs may further test the

26  veracity of the declarations and the manner in which Defendant procured them." (Doc. 42 at 12).  In

27  essence, Plaintiffs seek further modification of the scheduling order to conduct discovery related to

28  class certification.

1   Scheduling orders "are at the heart of case management," *Koplve v. Ford Motor Co.*, 795

2   F.2d 15, 18 (3rd Cir. 1986), and are intended to alleviate case management problems. *Johnson v.*

3   *Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order "is not a

4   frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Id.* at 610.

5   "The Ninth Circuit has consistently demonstrated that Rule 16's deadlines are firm, real and are to be

6   taken seriously by the parties and their counsel." *Shore v. Brown*, 74 Fed R. Serv. 3d (Callaghan)

7   1260, 2009 U.S. Dist. LEXIS 94828, at *7 (E.D. Cal. Oct. 9, 2009). The Ninth Circuit stated, "Rule

8   16 ... recognizes the inherent power of the district court to enforce its pretrial orders ..." *Goddard v.*

9   *United States Dist. Court*, 528 F.3d 652, 657 (9th Cir. 2008).

10   Plaintiffs have not demonstrated good cause for reopening the discovery period, and

11   Plaintiffs fail to discuss the ramifications of reopening discovery on the eve of their motion for class

12   certification. Indeed, at the time Plaintiffs requested additional discovery, the motion for class

13   certification and the opposition thereto had already been filed, and Plaintiffs reply brief was due

14   within a few days. Furthermore, the Court amended the scheduling order on September 23, 2011, to

15   allow the defendants additional time to prepare their opposition *and* to allow additional time for

16   Plaintiff's to prepare their reply. Before the order was issued, the Court conducted a telephonic

17   conference on the topic with counsel. As a result of the conference, the Court granted Plaintiffs the

18   additional time they asserted would be needed to prepare their reply. The Court cannot accept that

19   Plaintiffs were unaware that counter declarations would be offered with the opposition and, in fact,

20   Defendant represented at the telephonic conference that it *would* offer counter declarations. Thus,

21   the Court has no understanding why, at the time of the telephonic conference on September 23, 2011,

22   Plaintiffs did not seek leave to conduct additional discovery after the opposition was filed, if they

23   truly believed that it was needed.[1]

24   _____

25   [1]Further, the Court is unable to discern any reason for Plaintiffs' delay in raising the discovery issue related to
Defendant's alleged failure to disclose the contact information of putative class embers in compliance with the Court's Order

26   dated June 13, 2011 (Doc. 30). The Court ordered Defendant to produce documents responsive to Plaintiffs' discovery
request within ten days of the Court's Order, or by June 23, 2011. (Doc. 30 at 7). Though the Court held a teleconference

27   on September 23, 2011, Plaintiffs did not assert Defendant failed to comply with the Court's order. Significantly, Defendant
informed the Court of the intention to file a number of declarations in support of the motion for class certification during the

28   teleconference. However, Plaintiffs remained silent as to any failure of Defendant to obey the Court's discovery order.

1    Finally, the Court does not find the methods used to obtain the declarations was improper.

2  Therefore, Plaintiffs' request for additional discovery is **DENIED**.

3  **VIII.   Conclusion and Order**

4    For the foregoing reasons, Plaintiffs have shown several declarations filed by Defendant in

5  support of the motion for class certification should be stricken from the record because they failed to

6  meet the statutory requirements.  In addition, because Question 14 was a compound question, the

7  declarants' responses should be stricken from the record.

8    Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' motion to strike the declarations is

9  **GRANTED IN PART AND DENIED IN PART as follows**:

10    1.    Declarants' responses to Question 14 are **STRICKEN**;

11    2.    The declarations of Miguel Nunez, Irma Gallardo, Rafael Valencia, Jose Arellano,

12        Lucia Cortez, Patricia Gallardo, Amparo Juarez, Guillermo Tinoco, Fabiola Morales,

13        Angel Lopez Cruz, Teresa Moreno, Eugenio Antonio Cruz, Federico Tinoco, Gilberto

14        Lopez, Julio Perez, and Rafael Hernandez are **STRICKEN**;

15    3.    Plaintiffs' motion to strike as to the remaining declarations is **DENIED**; and

16    4.    Plaintiffs' request for time for additional discovery related to the method used to

17        obtain declarations is **DENIED**.

18  IT IS SO ORDERED.

19  Dated:   **December 12, 2011**                    **/s/ Jennifer L. Thurston**
                                  UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27  Plaintiffs made a tactical decision to remain silent on the issue for nearly *five months*, and did not raise the issue of failure
to comply with the Court's order until November 14, 2011, at which time Plaintiffs filed a reply brief to the motion for class
certification (Doc. 43) and filed evidentiary objections (Doc. 45).  Consequently, Plaintiffs failed to timely raise this issue

28  before the Court, and the Court will not order sanctions pursuant to Rule 37 at this time, nor reopen discovery on this basis.