1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                    **EASTERN DISTRICT OF CALIFORNIA**

8

9   **MARGARITA ROSALES and**           )      **CIV-F-09-0707 AWI JLT**
    **ANGELICA ROSALES, on behalf of**  )
10  **themselves and all others similarly**  )   **ORDER ADOPTING FINDINGS AND**
    **situated,**                       )      **RECOMMENDATIONS**
11                                       )
                   **Plaintiffs**,       )
12                                       )
        **v.**                          )
13                                       )
    **EL RANCHO FARMS and DOES 1 to 20,** )
14                                       )
                   **Defendant**.        )
15  _____ )

16

17                         **I. History**

18          Defendant El Rancho Farms ("El Rancho") is a commercial table grape grower based in

19  Kern County.  El Rancho does not directly employ workers; instead, El Rancho works with

20  various farm labor contractors ("FLCs"), who provide workers.  Plaintiffs Margarita Rosales and

21  Angelica Rosales ("Plaintiffs") worked in El Rancho's facilities through 2005 and 2004

22  respectively.  Plaintiffs were directly employed by a FLC known as Garza Contracting Inc.

23  ("Garza").  Garza is not a defendant in this case.

24          This case is connected to one brought in 2004 in state court.  That case was initially

25  brought by third party workers as a potential class action against third party FLCs and other table

26  grape growers.  On September 12, 2005, Angelica Rosales and El Rancho were added as plaintiff

27  and defendant.  The case was removed to federal court in 2005 under federal question

28  jurisdiction.  Meanwhile, a parallel potential class action case against El Rancho and the other

                                         1

table grape growers was filed in federal court on November 9, 2005.  After various motions, the two cases were consolidated and severed.  The end result was that in each case, the defendant was one table grape grower and the plaintiffs are current or former workers seeking to represent a class action.

The operative complaint in this case alleges violations of the federal Migrant and Seasonal Agricultural Workers Protection Act; failure to pay wages; failure to pay reporting time wages; failure to provide rest and meal periods; failure to pay wages of terminated or resigned employees; knowing and intentional failure to comply with itemized employee wage statement provisions; penalties under Cal. Labor Code § 2699, et seq; breach of contract; and violation of the unfair competition law. Doc. 1.  Generally, Plaintiffs allege El Rancho has failed to comply with a variety of California labor laws, chiefly failing to pay minimum wage, forcing employees off the clock, forcing employees to purchase their own tools, failing to provide adequate meal and rest periods, failing to provide adequate wage statements, and failing to keep adequate time records.

Plaintiffs made a first motion for class certification which El Rancho opposed.  In the motion, Plaintiffs sought to certify four classes comprising of all El Rancho workers regardless of which FLC they worked for: an unpaid rest break class, untimely rest and meal break class, off the clock work class, and purchasing tools class.  Magistrate Judge Thurston issued a findings and recommendation ("F&R") to deny Plaintiffs' motion. Doc. 52.  After review of the filed objections, the F&R was adopted in full. Doc. 56.  Plaintiffs made a motion for reconsideration based on new evidence and a motion to certify the issue of class certification for interlocutory appeal. Docs. 60 and 66.  Plaintiffs sought to certify three narrowed classes (an untimely rest and meal break class, off the clock work class, and purchasing tools class) encompassing only those workers jointly employed by Garza at El Rancho facilities.   El Rancho opposed both motions and filed a motion for summary judgment against the named Plaintiffs. Docs. 81 and 82.  The motion for reconsideration was granted in part and denied in part while all other motions were denied; Plaintiffs were granted leave to file a second motion for class certification limited the issue of untimely meal periods. Doc. 95.  Plaintiffs made the appropriate motion. Doc. 96.  Judge

Thurston issued an F&R to grant the motion. Doc. 106.  El Rancho has filed objections; Plaintiffs

seek to have the F&R adopted in full. Docs 107 and 108.

## II. Legal Standards

"A judge of the court shall make a de novo determination of those portions of the report

or specified proposed findings or recommendations to which objection is made.  A judge of the

court may accept, reject, or modify, in whole or in part, the findings or recommendations made

by the magistrate judge." 28 U.S.C. §636(b)(1).

## III. Discussion

Judge Thurston concluded that the Fed. Rule Civ. Proc 23(a) and Fed. Rule Civ. Proc.

23(b)(3) factors are satisfied for the class defined as "All employees of Garza Contracting, Inc.

who worked at El Rancho Farms facilities from 11/9/2001, through 12/31/2008 and who were

provided a 12:00 noon meal break on shifts starting before 7:00 a.m."  El Rancho makes two

objections to the F&R.  First, El Rancho argues the proposed class should not cover the time

period between April 20, 2006 and December 31, 2008 as the evidence shows a lack of

commonality and predominance of individual questions over common ones. Doc. 107, El Rancho

Objection, 2:12-14.  Second, El Rancho argues the piece-rate workers were not subject to the

same meal period schedule as hourly workers, again showing a lack of commonality and

predominance of individual questions over common ones for piece-rate workers. Doc. 107, El

Rancho Objection, 2:19-24.  Those two limited issues are examined de novo.

### A. Time Frame

Under the former work schedule, El Rancho workers would start their shifts around 6:00

AM and not stop for a meal until 12:00 PM, noon.  At an unspecified date, El Rancho changed

its work schedule to have a meal break at 9:00 AM instead.  Judge Thurston found that this

change took place at the end of 2008. Doc. 106, F&R, 9:5-22.  Thus, the F&R defined the class

as including workers through December 31, 2008.

1    First, El Rancho asserts that the change took place in 2006.  In her F&R, Judge Thurston

2 referenced the depositions of John Kovacevich and Lynn Kirkorian, El Rancho's persons most

3 knowledgeable on the working schedules, who stated the change took place "late 2008, early

4 2009" (Doc. 107, Part 1, Kovacevich Deposition, 22:18) or "I believe at 2007" (Doc. 35, Part 3,

5 Kirkorian Deposition, 15:18).  In this motion, El Rancho points out that in other parts of the

6 deposition, Kovacevich says the change happened earlier: "It could have been slightly before

7 [July 7, 2008]" and "Q. So it's your understanding that the new policy went into effect probably

8 in 2008. Is that correct? A. Or possibly as early as 2006, if [certain records reviewed were] in fact

9 an El Rancho crew." Doc. 107, Part 1, Kovacevich Deposition, 40:22-23 and 44:16-20.  In total,

10 Kovacevich's statements shows confusion.  Overall, neither individual gives the impression that

11 he/she knew precisely when the change took place.

12    El Rancho asserts that the time records support their contention that the change happened

13 in 2006.  There is only one record from 2006 and 9 records from 2007 (mostly between

14 November 2-9, 2007).  Eight show a meal at 9:00 AM or 10:00 AM with one showing a meal at

15 12:00 and one showing no meal period at all. Doc. 35, Part 10, at 35-42; Doc. 100, Part 4, at 5-6.

16 However, there are approximately 135 time records from throughout 2008.  The vast majority

17 show either a 12:00 PM meal, an insufficiently long meal period, or incomplete documentation.

18 See Doc. 35, Part 12, at 2-30; Doc. 35, Part 13, at 2-30; Doc. 96, Part 3, at 2-81; Doc. 100, Part

19 5, at 2-64.  Of these time records, only 20 affirmatively show an appropriate 9:00, 9:30, or 10:00

20 AM meal. Doc. 35, Part 12, at 8,12, and 21; Doc. 35, Part 13, at 21; Doc. 100, Part 5, at 18, 25,

21 27, 46-47, 52-59, and 63-64.  To demonstrate commonality, courts "determine if plaintiffs have

22 offered 'significant proof' that there was a common policy or practice concerning an issue central

23 to the plaintiffs' claims 'that could affect the class as a whole.'" Dominic Corea LP v. ILD

24 Telecommunications, Inc., 2013 WL 821193, *3 (C.D. Cal. 2013), quoting Ellis v. Costco

25 Wholesale Corp., 657 F.3d 970, 983 (9th Cir. 2011).  In this case, there is significant proof to

26 show that the change in work schedule did not take place until the end of 2008.

27    Second, El Rancho asserts that there was no company-wide policy on work schedules

28 which would make individual questions predominate over common questions for the more recent

1  workers.  This assertion is undermined by the deposition of Kovacevich which consistently

2  referred to the work schedules as "policy" that applied to all workers:

> Q. So what would the schedule look like for workers under this new policy?
> A. If we were not working a six-hour day, which happens on occasion, it would normally
>    be at 9:00 they would have a 30-minute break. And then at 12:00 they would take
>    a 20-minute break....
> Q. And this applied to all crews?
> A. Yes....
> Q. And that policy was either approved by you or Bill Dye?
> A. Yes.
> Q. And that should have been in place throughout the rest of the time up to today?
> A. Yes.

9  Doc. 107, Part 1, Kovacevich Deposition, 22:19-23:3 and 44:21-45:1.  Kovacevich's statement

10  shows that the workers were generally subject to the same meal schedule.  This is borne out by

11  the actual time sheets that have been submitted.  As previously stated, when a common policy

12  can be established, some individual variation will not defeat class certification. Cf. Delagarza v.

13  Tesoro Ref. & Mktg. Co., 2011 U.S. Dist LEXIS 101127, *19-22 (N.D. Cal. 2011) ("that some

14  workers can leave the premises with permission does not negate Plaintiffs' assertion that there is

15  a general default policy against leaving the premises").

**B. Piece Rate Workers**

18  El Rancho argues that "unlike workers paid by the hour, piece rate workers did not take

19  meal or rest periods together. Instead, piece rate workers were given the discretion to take their

20  meal periods whenever they chose to do so." Doc. 107, El Rancho Objections, 10:16-18.  There

21  is only limited evidence as to the time records of purely piece rate workers.  However, that

22  evidence contradicts El Rancho's assertion.  Plaintiffs provide 39 time records they assert reflect

23  purely piece rate work; these records reflect a 30 minute meal period at 12:00 PM. Doc. 109, Part

24  2, Exhibit 2.  Examination of the other time records filed in the docket of this case also show that

25  piece rate workers took unified breaks. See Doc. 35, Part 11, at 24-25; Doc. 35, Part 12, at 13 and

26  17; Doc. 100, Part 5, at 33.  These time records affirmatively show meal periods.  If piece rate

27  workers did not take these breaks together, there should be no entries under those categories.

28  The time records suggest that piece rate workers did in fact work in unison, with a coordinated

1   meal schedule.

2          In addition to the time records, Kovacevich's deposition provides evidence that piece rate

3   workers took breaks as a group at set times:

4          Q. Lunch is always at 12:00?
           A. Or in the last two years he might call the lunch at 9:00 and then call the breaks in the
5              afternoon.
           Q. Does the non-harvest crews follow the new schedule as well or the old schedule?
6          A. New schedule.
           Q. So everybody is following that schedule?
7          A. Yes.
           Q. Okay. And that is - you mentioned girdling first, and then did you distinguish girdling
8              from the other ones?
           A. I distinguished girdling because it's a very short four to five-hour job.
9

10  Doc. 100, Part 2, 48:3-15.  Kovacevich stated that girdling work does not follow the schedule

11  that applies to all other work because it is a job of short duration.  Plaintiffs point out that

12  girdling is piece rate work. Doc. 109, Part 1, Kovacevich Deposition, 46:14-16.  Kovacevich

13  does not distinguish girdling because it is piece rate work.  Given this exchange, the strong

14  implication is that piece rate work follows the same break schedule as hourly wage work.

15

16                                    **IV. Order**

17          The Findings and Recommendations, filed August 29, 2012 (Doc. 106), is ADOPTED in

18  full:

19          1. The Class is defined as "All employees of Garza Contracting, Inc. who worked at El

20  Rancho Farms facilities from 11/9/2001 through 12/31/2008 and who were provided a 12:00

21  noon meal break on shifts starting before 7:00 a.m."

22          2. Plaintiffs Angelica Rosales and Margarita Rosales (aka Lorena Corza) are appointed as

23  Class Representatives.

24          3. The Law Firm of Mallison & Martinez is appointed as Class Counsel.

25  IT IS SO ORDERED.

26
    Dated:    March 22, 2013                    _____
27
                                                SENIOR  DISTRICT  JUDGE
28

                                        6