1
2
3
4
5
6
7

8                      **UNITED STATES DISTRICT COURT**

9                     **EASTERN DISTRICT OF CALIFORNIA**

10

11   MARGARITA ROSALES and ANGELICA          )   Case No.: 1:09-cv-00707 - AWI - JLT
     ROSALES, on behalf of themselves and all )
12   others similarly situated,               )   ORDER DISREGARDING DEFENDANT'S
                                               )   MOTION TO MODIFY THE SCHEDULING
13                    Plaintiffs,              )   ORDER
                                               )
14            v.                               )   (Doc. 145)
                                               )
15   EL RANCHO FARMS and DOES 1-20,           )
                                               )   FINDINGS AND RECOMMENDATIONS
16                    Defendants.              )   DENYING DEFENDANT'S MOTION FOR
                                               )   DECERTIFICATION OF THE CLASS
17   _____ )

18            Defendant El Rancho Farms ("El Rancho") seeks modification of the Court's Scheduling

19   Order to permit the filing of an additional dispositive motion to request decertification of the class.

20   (Doc. 146.)  Plaintiffs Margarita Rosales and Angelica Rosales oppose modification of the Scheduling

21   Order. (Doc. 154.)  The Court heard the oral arguments of the parties at a hearing on January 23, 2014.

22            For the following reasons, Defendant's motion to modify the Scheduling Order is

23   **DISREGARDED**.  Pursuant to Fed. R. Civ. P. 23(c)(1)(C), the Court recommends the motion for

24   decertification be **DENIED**.

25   ///

26   ///

27   ///

28   ///

                                                 1

## I.      Relevant Procedural History

On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers based in Kern County. (*Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-1417-AWI-SMS, Doc. 2.)[1]  At the time the complaint was filed, the plaintiffs were unnamed former and current employees of the defendants.  *See id.*  On December 6, 2005, Plaintiffs filed their First Amended Complaint, identifying additional defendants, including El Rancho Farms. (*Doe*, Doc. 9.)  The Court acknowledged the *Doe* matter was related to several other cases initiated against grape growers.  *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008).

Defendants in *Doe*, including El Rancho, filed motions to dismiss, which were granted by the Court on March 31, 2008. (*Doe*, Docs. 81, 168.)  In addition, the Court granted motions to sever the action, and the Court ordered the plaintiffs to file amended pleadings against each defendant.  *Id.*  On May 29, 2008, "Angelica Rosales"[2] and Margarita Rosales were identified as plaintiffs in the Third Amended Complaint against El Rancho Farms. (*Doe*, Doc. 173.)  On March 31, 2009, the Court ordered Plaintiffs to re-file in a new action within twenty days to finalize severance. (*Doe*, Doc. 241.)

On April 20, 2009, Plaintiffs filed their complaint against El Rancho, alleging the following: violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801; failure to pay wages; failure to pay reporting time wages; failure to provide meal and rest periods; failure to pay wages of terminated or resigned employees; knowing and intentional failure to comply with itemized employee wage statement provisions; penalties under Labor Code § 2699, *et seq.*; breach of contract; and violation of unfair competition law. (Doc. 1.)  Plaintiffs filed the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California." (*Id.* at 4.)

In compliance with the Court's deadline for seeking class certification, Plaintiffs filed a motion

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  As a result, the Court may take judicial notice of its own records.  Therefore, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-01417-AWI-SMS.

[2] The true and correct name of "Angelica Rosales" is "Maria Lorena Corza Alvarado," though she is known as "Lorena Corza."  Ms. Corza reports she used the name of her daughter, "Angelica Rosales," while working at El Rancho. (Doc. 35-7 at 3).

on September 9, 2011.  (Doc. 33.)  Plaintiffs sought certification of classes for unpaid rest breaks,

untimely rest and meal breaks, off-the-clock work, and tool reimbursement.  Each of these classes

included "fieldworkers employed or jointly employed by El Rancho."  However, Plaintiffs failed to

show Defendant was a joint employer of the fieldworkers.  Also, Plaintiffs failed to demonstrate they

worked a pure piece rate basis and lacked standing to represent the unpaid rest break class.  Conflicting

evidence defeated certification of the remaining classes.  The recommendations were adopted in full on

January 31, 2012, and Plaintiffs' motion for class certification was denied.  (Doc. 56.)

Plaintiffs filed a motion for reconsideration based upon new evidence, seeking to demonstrate

El Rancho was a joint employer and three narrowed class definitions satisfied the requirements of

class certification.  (Doc. 60.)  On July 6, 2012, the Court granted Plaintiffs' motion in part, and gave

leave "to file a second motion for class certification with respect to meal periods of Garza employees

who worked at El Rancho facilities."  (Doc. 95 at 9.)  Accordingly, Plaintiffs filed their second motion

for class certification on July 26, 2012.  (Doc. 97.)

On August 19, 2012, the Court recommended Plaintiffs' second motion for class certification

be granted.  (Doc. 106.)  After considering the objections filed by Defendant and Plaintiffs' response

thereto, the findings and recommendations were adopted in full on March 25, 2013.  (Doc. 112).

Accordingly, the class is defined as follows:

> All employees of Garza Contracting, Inc. who worked at El Rancho Farms facilities
> from 11/9/2001 through 12/31/2008 and who were provided a 12:00 noon meal break
> on shifts starting before 7:00 a.m.

(Doc. 106 at 13; Doc. 112 at 6.)

Following resolution of the motion for class certification, the Court held a status conference

with the parties to considering scheduling the remainder of the case. The parties filed a Joint Status

Report in which Plaintiffs requested additional discovery, while Defendant argued the discovery period

had closed, and the deadlines for filing non-dispositive and dispositive pre-trial motions had passed.

(Doc. 114.)  On April 19, 2013, the Court issued an "Order Amending the Scheduling Order," declining

to reopen discovery, but amending the filing deadlines for non-dispositive and dispositive motions in

light of the fact that the deadlines "expired while the parties were awaiting rulings on Plaintiffs'

motions for class certification."  (Doc. 117 at 2.)  Therefore, non-dispositive motions were to be filed

3

no later than April 29, 2013, and dispositive motions were to "be filed on or before **June 10, 2013**." (*Id.*, emphasis in original.)

On November 8, 2013, Defendant filed the motion now pending before the Court, requesting modification of the Court's Scheduling Order to file a dispositive motion for decertification of the class certified on August 12. (Doc. 146.)  Plaintiff opposes modification of the Scheduling Order, arguing the motion is deficient and Defendant has not demonstrated good cause.

## II.      Scheduling Orders

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3).  In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery."  *Id.* Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it."  Fed. R. Civ. P. 16(d).  Scheduling orders are intended to alleviate case management problems.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).  As such, a scheduling order is "the heart of case management."  *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  *Johnson*, 975 F.2d at 610 (*quoting Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)).  Good cause must be shown for modification of the scheduling order.  Fed. R. Civ. P. 16(b)(4).  The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment.  The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension.  Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.  Although the existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification.  If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted).  Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation."  *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).  A party requesting modification of a scheduling order may be required to show:

4

(1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

## III.   **Discussion and Analysis**

### A.   **Defendant's Diligence**

Defendant argues that after the class was certified in this action, the Supreme Court "specified that it requires a common method of proof for determination of damages so that 'individual damage calculations do not inevitably overwhelm questions common to the class.'"  (Doc. 146 at 4) (quoting *Comcast v. Behrend*, 133 S.Ct. 1426, 1422 (2013)).  According to Defendant, "there is good cause to permit Defendant[] to bring this motion past the deadline for filing of non-dispositive motions because case law is rapidly changing since *Comcast v. Behrend*."  (*Id.* at 12, emphasis omitted.)  Defendant observes the deadline for non-dispositive motions was April 29, 2013, but the Supreme Court issued its decision in *Comcast* on March 27, 2013.  (*Id.* at 13.)

Significantly, however, a motion for class certification is a dispositive motion.  *See Davis v. Devanlay Retail Group, Inc.*, 2012 U.S. Dist. LEXIS 109798, *4 (E.D. Cal. Aug. 3, 2012).  This Court explained a motion for class certification is dispositive because "the motion is one that will affect whether or not the litigation proceeds."  *Id.*  It follows that a motion to decertify the class is likewise dispositive because it challenges the class members' claims, and the Court must decide whether the class claims may proceed.  Consequently, Defendant's motion to decertify the class should have been filed on or before June 10, 2013, the deadline to file dispositive motions.  (*See* Doc. 117 at 2.)

In any event, El Rancho does not explain why it waited nearly *five months* after the dispositive motion deadline to file its request for modification of the Scheduling Order.  Although Defendant argues that the basis for its request for decertification is the Supreme Court's ruling in *Comcast*, that case was issued with more than two months remaining for the filing of dispositive motions.  Defendant fails to demonstrate any efforts to see decertification within the timeframe set by the Court.  Therefore, the Court cannot find Defendant acted with the diligence required to satisfy the good cause standard of

1    Rule 16.  *See Jackson*, 186 F.R.D. at 608 (if a party fails to demonstrate diligence, the inquiry ends).

2    However, because the Court can consider a motion for decertification under Fed. R. Civ. P.

3    23(c)(1)(C) to alter or amend a class certification before final judgment, whether the scheduling order

4    should be amended is irrelevant and **DISREGARDED**.

5          **B.**     **Request for Decertification**

6          The Ninth Circuit has recognized that Rule 23 "provides district courts with broad discretion to

7    determine whether a class should be certified, and to revisit that certification throughout the legal

8    proceedings before the court."  *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2011).  The

9    burden is on a party seeking decertification to establish that Rule 23 is not satisfied.  *Gonzales v. Arrow*

10   *Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007); *Slaven v. BP America, Inc.*, 190 F.R.D.

11   649, 651 (C.D. Cal. 2000).  This burden "is relatively heavy," since any "'doubts regarding the

12   propriety of class certification should be resolved in favor of certification.'"  *Slaven*, 190 F.R.D at 651

13   (quoting *Groover v. Michelin North Am., Inc.*, 187 F.R.D. 662, 670 (M.D. Ala. 1999)).

14         Here, Defendant argues that under *Comcast*, "plaintiffs must establish that damages are capable

15   of measurement on a class-wide basis, because otherwise, questions of individual damage calculations

16   will inevitably overwhelm questions common to the class." (Doc. 146 at 13) (citing *Comcast*, 133 S.Ct.

17   at 1433).  According to Defendant,

18         [I]t is undisputed that at one point in time, Garza maintained a uniform policy of
           providing meal periods at noon even when the work-day began before 7:00 a.m. But,
19         Garza's uniform policy only serves as proof of a violation of labor law on days that
           crews followed the policy and commenced their workdays before 7:00 a.m., and for field
20         laborers who worked more than 6 hours.  For crews that did follow the policy, plaintiffs
           have failed to make any showing of a mechanical and uniform method of proof to
21         determine the identifies of individuals working on those days, and to ascertain with the
           requisite certainty that a particular field laborer worked more than 6 hours, thereby
22         entitling that worker to a meal period and resulting damages for late meal periods.

23   (Doc. 146 at 6.)  Defendant acknowledges that if liability is established, "then damages would be a

24   simple calculation of 1-hour's wages for each day that a field laborer worked more than 6 hours and did

25   not receive a meal period within 5 hours of the start of the shift."  (*Id.* at 18.)  However, Defendant

26   asserts the employment records in this case "render[] it impossible to determine damages . . .  in an

27   efficient and mechanical manner."  (*Id.*)

28         Defendant asserts that "[t]he only records for the time period of 2001 through 2005 are 'dailies'

1   and 'payroll registers," and that there are no timesheets. (*Id.* at 6.) Although the dailies show the

2   number of workers, the start time and meal break, and the hours worked by a crew at El Rancho, they

3   "do not reveal the identities of the individuals working on that crew that day." (*Id.*) The payroll

4   registers identify the field laborers and the number of hours worked during the pay period, but do not

5   specify "which days a particular field laborer worked, how many hours on any given day that field

6   laborer worked, or even how many hours are specifically attributable to El Rancho Farms as opposed to

7   other growers." (*Id.*) Defendant contends the records for 2006 through 2008 are likewise incomplete,

8   and as a result "there will be significant time and effort devoted to proving when shifts started and

9   when meal periods were provided for each day of work." (*Id.* at 7.) Defendant argues that "the limited

10   records in evidence" and "Garza's failure to keep records in such a manner so as to determine the hours

11   worked in a particular day by a particular employee poses significant individual issues and completely

12   eviscerates any ability to mechanically, feasibly, and efficiently determine liability for a given day and

13   the resulting damages." (*Id.* at 8.)

14          Significantly, the Ninth Circuit reiterated in *Levya v. Medline Industries, Inc.*, 716 F.3d 510 (9th

15   Cir. 2013) that "the presence of individualized damages cannot, by itself, defeat class certification

16   under Rule 23(b)(3)." The Court observed the plaintiffs in *Comcast* "did not isolate damages resulting

17   from any one theory of antitrust impact." *Levya*, 716 F.3d at 514 (quoting *Comcast*, 133 S.Ct. at 1431).

18   As a result, the plaintiffs failed to "show that their damages stemmed from the defendant's actions that

19   created the legal liability." *Id.* In *Levya*, the plaintiffs were current and former hourly employees of the

20   defendant, who alleged violations of California's Labor Code, Wage Order 1-2001, and California's

21   Unfair Business Practices Law. *Id.*, 716 F.3d at 511. The district court denied class certification,

22   finding it "was not the superior method of adjudication because of the difficulty of managing the

23   approximately 500 member class and determining 'the extent to which each putative class member lost

24   wages, and, consequently, suffered damages.'" *Id.* at 515. On appeal, the Ninth Circuit examined

25   whether the plaintiffs' motion for class certification was defeated by individual questions that

26   predominated over common questions. *Id.* at 514. The Court explained the damages determination did

27   not defeat the plaintiffs' motion:

28          [D]amages determinations are individual in nearly all wage-and-hour class actions.
            *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 139 Cal.Rptr.3d 315, 273 P.3d

513, 546 (2012) ("In almost every class action, factual determinations of damages to individual class members must be made. Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.") (internal citation and quotation marks omitted). Thus, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975); *see also Yokoyama*, 594 F.3d at 1089 ("The potential existence of individualized damage assessments ... does not detract from the action's suitability for class certification.").

*Levya*, 716 F.3d at 513-14.  The Court explained that unlike *Comcast*, if the defendant's liability was proven, "damages will be calculated based on the wages each employee lost due to [the defendant's] unlawful practices." *Id.* at 514.

Since *Comcast* and *Levya*, district courts throughout California have addressed determined that *Comcast* does not defeat class certification where damages are to be calculated based on the wages each employee lost due to the defendant's unlawful practices. *See, e.g., In re High-Tech Employee Antitrust Litig.*, 298 F.R.D. 555, 582 (N.D. Cal. 2013) (explaining *Comcast* does not require plaintiffs to show damages are measurable on a class-wide basis or by using common evidence, but rather requires plaintiffs to tie damages to their theory of liability); *Schulein v. Petroleum Dev. Corp.*, 2014 U.S. Dist. LEXIS 4154 at *17, 2014 WL 114520 at *7 (C.D. Cal. Jan. 6, 2014) (*Comcast* "does not mean that individualized inquiries into damages necessarily make a class action not viable"); *Dalton v. Lee Publications, Inc.*, 2013 U.S. Dist. LEXIS 156586 at *6-7, 2013 WL at 5887872 at *2 (S.D. Cal. Oct. 31, 2013) ("*Comcast* does not alter this Court's determination that damages for [an] unreimbursed expenses claim may be ascertained on a class-wide basis" because the plaintiffs where able to isolate damages for their claim, and individual calculation of damages did not defeat class certification).

Recently, in the Northern District addressed a defendant's motion to decertify a class based in part upon the Supreme Court's decision in *Quezada v. Con-Way Freight, Inc.*, 2014 U.S. Dist. LEXIS 5922 (N.D. Cal. Jan. 16, 2014).  The plaintiffs alleged the defendant was liable for wage-and-hour violations, and failure to pay its employees less than minimum wage for all hours worked. *Id.*, at *3. Seeking decertification, the defendant argued "individual issues predominate" and the court would be required to conduct individualized inquiries as to the amount of damages owed to each class member. *Id.*  However, the court observed that the Ninth Circuit "confirmed in *Levya* that ... damage calculations

1    alone cannot defeat certification." *Id.* at *8 (citing *Levya*, 716 F.3d at 513; *Yokoyama v. Midland Nat'l*

2    *Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).  Because "[t]he damages that are owed to class

3    members are owed due to [the] Defendant's unlawful practices," the court determined the necessity of

4    individualized damages calculations did not require decertification of the class. *Id.* at *8-9.

5           Similarly, here, Plaintiffs allege El Rancho is liable for wage-and-hour violations arising under

6    California law, and Plaintiffs link the calculations of their damages to the alleged violations by

7    Defendant, by seeking wages for uncompensated hours of work.  Defendant admits: "It is true that if

8    liability is proven, the damages would be a simple calculation of 1-hours wages for each day that a field

9    laborer worked more than 6 hours and did not receive a meal period within 5 hours of the start of the

10   shift." (Doc. 146 at 18.)  Even if El Rancho and Garza lack detailed records, it is undisputed that the

11   records that are available are capable of determining the total amount of damages due the class even if

12   to whom the damages should be paid is less than clear from the records.  As the Ninth Circuit

13   explained, the individualized calculations regarding the amount of damages owed to a class member is

14   insufficient to defeat class certification. *Levya*, 716 F.3d at 513-14.  Consequently, Plaintiffs have

15   satisfied the burden to "show that their damages stemmed from the defendant's actions that created the

16   legal liability." *See Comcast*, 133 S.Ct. at 1431.

17          Moreover, as pointed out by Plaintiff, assuming El Rancho is a joint employer of the putative

18   class members, El Rancho was obligated by Work Order 14 to maintain records detailing, among other

19   information, "when the employee begins and ends each work period. Meal periods, split shift intervals

20   and total daily hours worked shall also be recorded. Meal periods during which, operations cease and

21   authorized rest periods need not be recorded." (Cal. Code Regs. tit. 8, § 11140(7)(A)  Likewise, Garza

22   was obligated under California Labor Code § 1695.55 to provide El Rancho "a payroll record for each

23   farmworker providing labor under the contract. The payroll record shall include a disclosure of the

24   wages and hours worked for each farmworker" and Garza was obligated to maintain these records "for

25   the duration of the contract."  The fact that neither El Rancho nor Garza maintained the required

26   records cannot be used to preclude the class claims here.

27   ///

28   ///

9

**IV.     Order**

Because Defendant fails to demonstrate good cause for amending the Scheduling Order to allow a dispositive motion to be heard out of time, **IT IS HEREBY ORDERED**:  Defendant's motion to amend the scheduling order (Doc. 145) is **DISERGARDED**.

**V.     Findings and Recommendation**

Defendant asserts that the class should be decertified in light of the Supreme Court's ruling in *Comcast*.  However, Defendant fails to meet its burden to demonstrate decertification is proper in the face of Plaintiffs demonstration that their damages stem from the defendant's actions. *See Comcast*, 133 S.Ct. at 1431.  The individual damages calculations do not mandate decertification of the class. *Levya,* 716 F.3d at 513-14.  Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Defendant's request to decertify the class be **DENIED**.

These Findings and Recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendation, any party may file and serve written objections with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any Reply to the Objections shall be filed and served within fourteen days of the date of service of the Objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 28, 2014**                    **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE