1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **EASTERN DISTRICT OF CALIFORNIA**
10

11 MARGARITA ROSALES, et al.,                )  Case No.: 1:09-cv-00707-AWI-JLT
                                             )
12            Plaintiffs,                    )  ORDER GRANTING PLAINTIFFS' MOTION
                                             )  FOR PRELIMINARY APPROVAL OF CLASS
13        v.                                 )  SETTLEMENT
                                             )
14 EL RANCHO FARMS, et al.,                  )  (Doc. 164)
                                             )
15            Defendants.                    )
   _____ )
16 ANGEL LOPEZ CRUZ, et al.,                 )
                                             )
17            Plaintiffs,                    )
                                             )
18        v.                                 )
                                             )
19 EL RANCHO FARMS, et al.,                  )
                                             )
20            Defendants.                    )
   _____ )
21

22         Plaintiffs Margarita Rosales and Angelica Rosales[1] request preliminary approval of a class

23 settlement.  (Doc. 164.)  By and through this motion, Plaintiffs seek: (1) conditional certification of the

24 settlement class; (2) preliminary approval of the settlement; (3) appointment of Margarita Rosales,

25 Lorena Corza, Angel Lopez Cruz, and Angelica Alvarez as the class representatives; (4) appointment of

26

27 _____

28   [1] The true and correct name of "Angelica Rosales" is "Maria Lorena Corza Alvarado," though she is known as
     "Lorena Corza."  Ms. Corza reports she used the name of her daughter, "Angelica Rosales," while working at El Rancho.
     (Doc. 35-7 at 3). Therefore, the Court will refer to plaintiff "Angelica Rosales" as "Lorena Corza."

                                              1

Stan Mallison and Hector Martinez as Class Counsel; (5) approval of the class notice and related materials; (6) appointment of Gilardi & Co., LLC, as the Settlement Administrator; and (7) scheduling for final approval of the settlement.  (Doc. 164 at 2.)  Defendant does not oppose the motion for preliminary approval of the class settlement.  However, the parties request the Court resolve their remaining disputes regarding the distribution plan and the identity of the cy pres beneficiary.  (*See id.*)

The Court has considered the proposed settlement between the parties, and the proposed Notice, Claim Form, and Elusion Form.  On November 24, 2014, the Court heard the oral arguments of counsel.  For the following reasons, Plaintiffs' motion for preliminary approval of class settlement is **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers based in Kern County, including D.M. Camp & Sons; Marko Zaninovich, Inc.; Sunview Vineyards of California, Inc.; and Giumarra Vineyards Corporation.[2]  (*Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-1417-AWI-SMS, Doc. 2.)  At the time the complaint was filed, the plaintiffs were unnamed former and current employees of the defendants.  (*See id.*)  On December 6, 2005, the plaintiffs filed a First Amended Complaint, identifying additional defendants, including El Rancho Farms.  (*Doe*, Doc. 9).  The Court acknowledged the *Doe* matter was related to several other cases initiated against grape growers.  *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008).

Defendants in *Doe*, including El Rancho Farms, filed motions to dismiss, which were granted by the Court on March 31, 2008.  (*Doe*, Docs. 81, 168.)  In addition, the Court granted motions to sever the action, and the Court ordered the plaintiffs to file amended pleadings against each defendant.  (*Id.*)  On May 29, 2008, "Angelica Rosales" and Margarita Rosales were identified as plaintiffs in the Third Amended Complaint against El Rancho Farms.  (*Doe*, Doc. 173.)  On March 31, 2009, the Court ordered Plaintiffs to re-file in a new action within twenty days to finalize severance.  (*Doe*, Doc. 241.)

On April 20, 2009, Plaintiffs filed their complaint against El Rancho Farms, alleging: violations

---

[2]  The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  Because the Court may take judicial notice of its own records, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-01417-AWI-SMS.

of the Agricultural Workers Protection Act, 29 U.S.C. § 1801; failure to pay wages; failure to pay reporting time wages; failure to provide meal and rest periods; failure to pay wages of terminated or resigned employees; knowing and intentional failure to comply with itemized employee wage statement provisions; penalties under Labor Code § 2699, *et seq.*; breach of contract; and violation of unfair competition law.  (Doc. 1.)  Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California."  (*Id.* at 4.)

In compliance with the Court's deadline for seeking class certification, Rosales and Corza filed a motion on September 9, 2011.  (Doc. 33.)  Rosales and Corza sought certification of classes for unpaid rest breaks, untimely rest and meal breaks, off-the-clock work, and tool reimbursement.  Each class included "fieldworkers employed or jointly employed by El Rancho." (*Id.*) However, Rosales and Corza failed to show El Rancho was a joint employer of the fieldworkers, as required by the class definitions.  Further, they failed to demonstrate they worked a pure piece rate basis, and the Court found Rosales and Corza lacked standing to represent the unpaid rest break class.  Finally, conflicting evidence defeated certification of the remaining classes.  The recommendations were adopted in full on January 31, 2012, and the motion for class certification was denied.  (Doc. 56.)

Rosales and Corza filed a motion for reconsideration based upon new evidence, seeking to demonstrate El Rancho was a joint employer and narrowed class definitions satisfied the requirements of class certification.  (Doc. 60.)  On July 6, 2012, the Court granted leave "to file a second motion for class certification with respect to meal periods of Garza employees who worked at El Rancho facilities." (Doc. 95 at 9.)  Accordingly, Rosales and Corza filed a second motion for class certification on July 26, 2012.  (Doc. 96.)

The Court found the requirements of Rule 23 of the Federal Rules of Civil Procedure were satisfied, and recommended a class be certified for only for the meal break claim.  (Doc. 106.)  These recommendations were adopted in full, and the class defined as: "All employees of Garza Contracting, Inc. who worked at El Rancho Farms facilities from 11/9/2001 through 12/31/2008 and who were provided a 12:00 noon meal break on shifts starting before 7:00 a.m." (Doc. 112.)  Rosales and Corza were appointed as class representatives, and the law firm of Mallison & Martinez was appointed as

3

1    Class Counsel.  (*Id.* at 6.)

2        Following the Court's determination that Rosales and Corza lacked standing to represent a class

3    for rest break violations, Angel Lopez Cruz and Angelica Alvarez initiated an action against El Rancho

4    Farms and Garza for failure to provide rest periods on November 28, 2012.  (Case No. 1:12-cv-1934-

5    AWI-JLT ("Cruz") Doc. 1.)  In addition, Cruz and Alvarez asserted El Rancho and Garza were liable

6    for violations of the Agricultural Workers Protection Act, failure to pay wages, failure to pay wages of

7    terminated or resigned employees, knowing and intentional failure to comply with itemized employee

8    wage statement provisions; penalties under Labor Code § 2699, and violation of unfair competition

9    law—similar to the claims presented by Rosales and Corza.  (*See id.*)  El Rancho and Garza filed

10   motions to dismiss, arguing the action was duplicative in nature and "an attempt by plaintiffs to certify

11   a subclass that was previously denied certification."  (*See Cruz*, Doc. 13 at 2.)  Although the motions

12   were taken under submission, the Court did not have the opportunity to issue a ruling.

13       On June 20, 2014, the parties filed a Notice of Settlement, reporting they "participated in a

14   private mediation session on June 11, 2014 with a private mediator, David Rudy," and were "in the

15   final stages of negotiating a Proposed Settlement Agreement."  (Doc. 159 at 1-2.)  Given the similarities

16   between the claims presented in *Rosales v. El Rancho Farms* (Case No. 1:09-cv-00707-AWI-JLT) and

17   *Cruz v. El Rancho Farms* (Case No. 1:12-cv-1934-AWI-JLT), the parties mediated the actions together.

18   (Doc. 161 at 4.)  The plaintiffs filed the motion for preliminary approval of class settlement on October

19   20, 2014, which is now pending before the Court.  (Doc. 164; *Cruz*, Doc. 38.)

20                           **THE PROPOSED SETTLEMENT**

21       Pursuant to the proposed settlement ("the Settlement"), the parties agree to a gross settlement

22   totaling $2,300,000.  (Doc. 165 at 5; Doc. 166-1 at 3, Settlement § I.S.)  Defendants El Rancho and

23   Garza agree to fund the Settlement for a class including "all persons who have been employed or

24   jointly employed by Garza Contracting at El Rancho Farms facilities between November 9, 2001 and

25   June 11, 2014."  (Doc. 165 at 16; Settlement § I.D.)  Defendants will pay $100,000 to the Claims

26   Administrator within ten days of preliminary approval of the class settlement, and pay the remainder no

27   later than January 31, 2015.  (Doc. 165 at 9; Doc. 166-1 at 13, Settlement § III.I.6.)

28   ///

                                              4

**I.      Payment Terms**

The settlement fund will cover payments to class members with additional compensation to the Class Representatives.  (Doc. 165 at 9; Doc. 166-1 at 5.)  In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the California Labor & Workforce Development Agency.  (Id.; Settlement § III.B.)  Specifically, the settlement provides for the following payments from the gross settlement amount:

- The Class Representatives will receive up to $10,000 each;

- Class counsel will receive no more than $766,667 for attorneys' fees, which equals 33.33% of the gross settlement amount, and $50,000 for expenses;

- The California Labor and Workforce Development Agency shall receive $30,000 from the award pursuant to PAGA; and

- The Settlement Administrator will receive up to $30,000 for fees and expenses.

(Id.)  After these payments have been made, the remaining money ("Net Settlement Amount") will be distributed as settlement shares to Class Members.  (Doc. 165 at 9, Settlement § III.F.1.)

To receive a settlement share from the Net Settlement Amount, a class member must submit a timely and valid claim form.[3]  Settlement shares will be calculated based upon:

(a) that Claimant's total pay periods (or if necessary, the number of Months of Employment) during the Class Period (b) divided by the aggregate number of pay periods (or if necessary, the number of Months of Employment) of all Participating Class Members (all class member claims) during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount.

(Doc. 166-1 at 7, Settlement § III.F.1.)  Consequently, the exact amount each receives depends upon how many class members submit timely and valid claim forms.

**II.      Releases**

The Settlement provides that Rosales, Corza, Cruz, and Alvarez (collectively, "Plaintiffs") and Class Members, other than those who elect not to participate in the Settlement, at the time final judgment is entered, shall release Defendants El Rancho and Garza from the claims arising in the class

---

[3]  Although Plaintiffs reported Defendants did not agree upon the proposed claim procedure, El Rancho reported it did "not prefer the direct delivery of checks over a claims procedure, or vice versa."  (Doc. 171-1 at 4.)

period.  Specifically, the release for class members provides:

> As of the date of the Judgment, all Participating Class Members hereby fully and finally release Defendants, and their partners, owners, subsidiaries, employees, officers, directors, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims").  The Class's Released Claims are limited to the time period November 9, 2001 to June 11, 2014 for claims for alleged unpaid wages, overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and restbreak penalties, and waiting-time penalties; and costs and attorneys' fees and expenses.  The Class Member's Released Claims include all claims arising from or related to the matters alleged in the Actions, or that could have been alleged in the Actions.

(Doc. 166-1 at 15, Settlement § III.J.2.)  The release for Plaintiffs encompasses more claims than the release of Class Members, which releases any claims that could have arisen during the course of their employment with Defendants.  (Doc. 166-1 at 5, Settlement § III.J.1.)  Specifically, Plaintiffs' release provides:

> As of the date of the Judgment, Plaintiffs and their Counsel hereby fully and finally release Defendants, and their partners, owners, subsidiaries, employees, officers, directors, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, including but not limited to claims arising from or related to their employment or claimed employment with Defendants, their compensation while employed as Defendants' employee, under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law (the "Plaintiffs' Released Claims").  The Plaintiffs' Released Claims include, but are not limited to, all claims arising from or related to the matters alleged, or that could have been alleged in the Actions.  The Plaintiffs' Released Claims include all such claims covering the time period November 9, 2001 to June 11, 2014 for unpaid wages, including overtime compensation, missed meal-period and rest-break wages, and interest; penalties, including but not limited to, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and attorneys' fees and expenses.  The Plaintiffs' Released Claims include all claims arising from or related to the matters alleged in the Actions, or that could have been alleged in the Actions.

(Id.)  Thus, claims released by Plaintiffs, but not Class Members, include any claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Employee Retirement Income Security Act.

## III.    Objections and Opt-Out Procedure

Any class member who wishes may file objections or elect not to participate in the Settlement.  The Notice of Proposed Settlement ("the Notice") explains the procedures to claim a share of the settlement, object to the settlement, or elect not to participate in the Settlement.  (Doc. 165 at 12; Doc.

166-2.)  The Notice explains the claims that are released as part of the Settlement.  (Doc. 166-2 at 9.)  With the Notice, each class member will receive the Claim Form, which will include the number of months each the class member was employed at El Rancho facilities and an estimate of the amount the class member will receive under the Settlement.  (Doc. 166-3 at 1.)

**IV.     The Cy Pres Beneficiaries**

Since many class action settlements result in unclaimed funds, parties should have a plan for distributing unclaimed funds. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).  The options for such distribution include cy pres distribution, escheat to the government, and reversion to the defendants. *Id.*, 904 F.2d at 1307.   Here, Plaintiffs and Defendants have agreed that a cy pres recipient should be designated for funds under the Settlement, but seek the Court's intervention related to their dispute concerning the identity of the beneficiary, and what funds should be directed to the cy pres beneficiary.  Defendants assert: "The identity of the cy pres recipient is a material term to El Rancho Farms, and is the reason that El Rancho agreed to such a large settlement amount. . . . El Rancho Farms agreed to pay 2/3 of $2.3 million because it had the option of selecting the cy pres recipient."  (Doc. 171-1 at 2, Estrada Decl. ¶ 6.)  Plaintiffs dispute this and argue that the execution of the settlement agreement which excludes this provision belies this claim.  Indeed, the willingness of Defendants to proceed in the settlement process without assurance that their proposed beneficiary would be selected undercuts their position.  In any event, the parties agree that the Court should select the beneficiary.

The Ninth Circuit has determined any proposed cy pres recipient should be "tethered to the nature of the lawsuit and the interest of the silent class members."  *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011).  In other words, the Ninth Circuit "require[s] that there be a driving nexus between the plaintiff class and the cy pres beneficiaries."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citing *Nachshin*, 663 F.3d at 1038).  The Court explained that without such tethering, the distribution of funds "may create the appearance of impropriety" by catering "to the whims and self interests of the parties, their counsel, or the court."  *Nachshin*, 663 F.3d at 1038.  Thus, a cy pres award should not benefit a group that is "too remote from the plaintiff class."  *Six Mexican Workers*, 904 F.2d at 1308.

7

In identifying a cy pres beneficiary, the Ninth Circuit directs courts to consider whether awards to the beneficiary "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." *Nachshin*, 663 F.3d at 1040. Further, the Court must consider whether the cy pres distribution is appropriate given the "size and geographic diversity" of the class members. *Id.* at 1040-41 (citing, e.g., *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 683 (8th Cir. 2002); *Houck on Behalf of U.S. v. Folding Carton Admin. Comm.*, 881 F.2d 494, 502 (7th Cir. 1989)).

Notably, the Ninth Circuit has determined also that issues related to the identity of a cy pres beneficiary are not generally ripe until there are funds that remain unclaimed. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (finding cy pres distribution "becomes ripe only if entire settlement fund is not distributed to class members" and declining to determine propriety of cy pres at that time). The Court explained that where a cy pres distribution is contingent on the outcome of the claims process for a cash distribution, issues regarding the identification of recipients "will not be ripe until it is determined that available cash remains in th[e] fund after the claims process has concluded." *Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012). At this time, there is no way to know whether there will be funds remaining and, therefore, the Court declines to make the selection at this time. The Court encourages the parties to continue to work to resolve this matter. Toward this end, the Court offers some general observations.

First, it does not appear the Juvenile Diabetes Research Fund ("JDRF"), though clearly worthy, is an ideal cy pres beneficiary in this action. Because the claims presented by Plaintiffs primarily deal with wage and hour violations, the objectives of the underlying statutes are not served by the JDRF. Further, there is no evidence that *any* member of the Settlement Class would benefit by the donation to the JDRF given the national scope of the organization. *See Cordy v. USS-Posco Indus.*, 2013 WL 4028627 at *3-4 (N.D. Cal. July 31, 2013) (declining to approve a cy pres award to the JDRF in wage and hour action because the parties did not explain how the proposed distribution was relevant to the settlement class).

The other two proposed beneficiaries provided a greater likelihood of benefit to the class. First, the CRLA is "an organization dedicated to enforcing farmworkers' labor rights in California." (Doc.

8

170 at 3)  Jeffrey Ponting, the Pro Bono Coordinator for the group, reports that the mission of the CRLA "is to fight for injustice and individual rights alongside the most exploited communities of our society." (Doc. 170-4 at 2, Ponting Decl. ¶¶ 1-2) (emphasis omitted.)  According to Mr. Ponting, the CRLA has a division called the "Fresno Migrant Unit," which "represents Migrant farmworkers in six Central California counties ranging from southern Kern County in the south to Merced County in the north." (*Id.*, ¶ 3.)  He asserts,  "Over the past ten years CRLA's Fresno, Salinas and Oxnard Migrant and Arvin/Lamont offices have filed suits on behalf of 250 Central Valley farmworkers in matters involving violations of the AWPA and, or California's wage and hour laws." (*Id.* at 2, ¶ 5.)  Mr. Ponting declares that if the CRLA is designated as a recipient of cy pres funds, it "will utilize those funds to protect the AWPA and California wage and hour rights of migrant farmworkers of Arvin, Lamont, southern Kern County and Central California." (*Id.*, ¶ 6.)

On the other hand, the Boys and Girls Club of Kern County, "serves low income workers in the same community as the silent class members in this action." (Doc. 171 at 4.)  El Rancho notes that this Court has determined previously that the Boys and Girls Club was an appropriate cy pres recipient in *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 484 (E.D. Cal. 2010), which was also a wage and hour action in which the plaintiffs alleged the defendant "failed to provide all legally required meal periods and rest breaks." (*See id.*; *Vasquez*, 266 F.R.D. at 284.  Notably, in *Vasquez* the Court approved cy pres distribution to *both* the CRLA and the Boys and Girls Club of Bakersfield, based upon the assertion of Stan Mallison— one of the attorneys representing Plaintiffs here—that the organizations serve low-income workers. *Vasquez*, 266 F.R.D. at 484.

Weighing the factors set forth by the Ninth Circuit, the CRLA appears to address the objectives of the underlying statutes.  However, it does not provide a reasonable certainty that a member of the Settlement Class will benefit from its funds because of the geographic scope of the organization. Although the workers at issue were employed on El Rancho properties, which are located in Lamont and Arvin, the CRLA representative asserts that the group represents farmworkers over a broader geographic area so cy pres funds would be nearly certain not to benefit those in the class.  (*See* Doc. 170-4 at 2, Ponting Decl. ¶ 6.)  On the other hand, the Boys and Girls Club is a local organization, which serves low-income residents of Kern County such as the members of the Settlement Class.  (*See*

Doc. 166-7 at 29-30, 168-69) (indicating 100% of the registered member families in Arvin and Lamont qualified for free or reduced-price lunches for school children).  Distribution to the Boys and Girls Club of Kern County provides a likelihood that the members of the Settlement Class will benefit from the cy pres funds.  *See Nachshin*, 663 F.3d at 1040 (giving significant weight to the geographic scope of the settlement class to determine whether the Boys and Girls Clubs of Los Angeles and Santa Monica were appropriate cy pres recipients for a national class).

Finally, although Plaintiffs assert a pro rata distribution is the best method to ensure Class Members receive all the settlement funds, the proposed method is impractical.  Under Plaintiffs' proposal, the Settlement Administrator would be required to calculate each claimant's share of the unclaimed funds and uncashed checks, and send a second payment to each of the class members.  This, undoubtedly, would increase the expenses to the Settlement Administrator.  However, implementation of the claims procedure set forth above ensures that claimants' ability to provide a "good" address where the claim check may be mailed and other contact information such as telephone numbers and e-mail address.  This substantially increases the likelihood that the claims checks will be received though there is nothing that can be done to force a claimant to cash a check once received.  Therefore, the funds received by the cy pres beneficiaries will include both "uncashed" and "unclaimed" funds."

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

### I.        Legal Standard

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

### II.        Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which

provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a).  Under the terms of the Settlement, the proposed class is comprised of "all persons who have been employed or jointly employed by Garza Contracting at El Rancho Farms facilities between November 9, 2001 and June 11, 2014." (Doc. 165 at 16; Settlement § I.D.)  Plaintiffs seek conditional approval of the class for settlement pursuant to Fed. R. Civ. P. 23(c)(1), under which the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  (Doc. 165 at 16) (quoting *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

## A.      Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982).  Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

### 1.      Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant*

*Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002)

("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained

class members . . . and listing thirteen cases in which courts certified classes with fewer than 100

members"). Here, Plaintiffs report there are "approximately 3,000 similarly situated Class Members."

(Doc. 165 at 16.) Therefore, the numerosity requirement is satisfied.

### 2.   Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

Commonality "does not mean merely that [class members] have all suffered a violation of the same

pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S.

Ct. at 2551. In this case, the parties fail to identify any common questions of fact and law. However,

Defendants do not dispute that the requirements of Rule 23 are satisfied. Accordingly, the Court finds

the commonality requirement is satisfied for purposes of settlement.

### 3.   Typicality

This requirement demands that the "claims or defenses of the representative parties are typical

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are

permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive"

with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether

other members have the same or similar injury, whether the action is based on conduct which is not

unique to the named plaintiffs, and whether other class members have been injured by the same course

of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks

and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the

typicality requirement is satisfied when the named plaintiffs have the same claims as other members of

the class and are not subject to unique defenses). Here, class members, including the named plaintiffs,

were paid under the same pay practices as every other class member. They have the same injury, and

the conduct was not unique to the named plaintiffs. Therefore, the typicality requirement is satisfied.

### 4.   Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them.

*Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party

"will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).  Here, the requirements for fair and adequate representation are met by Plaintiffs and the proposed class counsel, Stan Mallison and Hector Martinez.

Mallison and Martinez have extensive experience litigating wage and hour class action cases and in serving as class counsel.  (See Doc. 166 at 5-7, Mallison Decl. ¶¶7-11, 16.)  Mallison asserts "neither [he], nor any member of the firm, have any personal affiliation or family relationship with the plaintiffs and proposed Class Representatives."  (*Id.* at 7, ¶ 17.)  After reviewing the qualifications of Mallison and Martinez, the Court finds counsel satisfy the adequacy requirements.

Further, the interests of the named plaintiffs are aligned with those of the class—to maximize their recovery.  Accordingly, for settlement purposes only, the Court finds the named plaintiffs are suitable class representatives.

### B.     Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiffs assert, "the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair adjudication of the controversy.'" (Doc. 165 at 17-18) (quoting Fed. R. Civ. P. 23(b)(3)).  Thus, the Court finds the conditional class is maintainable under Rule 23(b)(3).

### III.     Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set

forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[4] and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted).  Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).  Reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute."  *Class Plaintiffs*, 955 F.2d at 1291(internal quotation marks and citation omitted).

## A.      Strength of Plaintiffs' Cases

In this action, there are several disputed claims the fact-finder would be required to determine. Plaintiffs would face a significant risk of success if both actions were to proceed, and assert:

> Counsel for Plaintiffs carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, the lengthy process of establishing specific damages, the difficulty in fully analyzing and utilizing the evidence at issue in this case, new legal decisions affecting pivotal issues in the case, class decertification issues, and other various possible risks and delays. [citation.] Plaintiffs' counsel realizes that no matter how good the facts and law, every trial retains inherent risk while the proposed settlement provides a certain recovery for Class Members.

(Doc. 165 at 7.)  Further, although the Court did not rule on the motions to dismiss filed in *Cruz*, Defendants argued the claims presented by Cruz and Alvarez were duplicative in nature.  (*See Cruz*, Doc. 13 at 2.)  Given the uncertainties of the merits of *both* actions, this factor weighs in favor of preliminary approval of the Settlement.

///

## B.      Risk, Expense, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If

---

[4] Because there is not a government participant in this action—only a government beneficiary of the settlement—this factor does not weigh in the Court's analysis.

the settlement were to be rejected, the parties would have to engage in further litigation, including discovery and seeking class certification in *Cruz*.  The time and expense of continued litigation could outweigh any additional recovery.  Further, Plaintiffs acknowledge, "legal developments could seriously diminish the value of [their] claims." (Doc. 165 at 15.)  On the other hand, the proposed settlement provides for immediate recovery for the class, which includes individuals who may have been excluded in the class previously certified by the Court.  Thus, this factor weighs in favor of approval of the Settlement.

### C.       Risk of Maintaining Class Status throughout the Trial

There is a substantial risk a class may not have been certified in *Cruz*, particularly if the Court were to determine, as Defendants argued, that the action was merely "an attempt by plaintiffs to certify a subclass that was previously denied certification." (*See Cruz*, Doc. 13 at 2.)  Due to the risk to the claims of class members, this factor supports preliminary approval of the Settlement.

### D.       Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

Here, the proposed gross settlement amount is $2,300,000. (Doc. 165 at 5; Doc. 166-1 at 3, Settlement § I.S.)  Although courts approving class settlements typically compare the settlement amount to the estimated total maximum liability, the parties did not calculate the total maximum liability following a review of the evidence. (*See generally* Doc. 165.)  Nevertheless, given the time expended by parties in mediation prior to reaching this agreement, it appears the parties agree that the gross settlement amount reflects a compromise as to all of Plaintiffs' allegations.  Accordingly, the Court finds the amount offered supports approval of the Settlement.

### E.       Extent of Discovery Completed and Stage of the Proceedings

Defendant El Rancho has been litigating this action since 2005, and "Angelica Rosales" and Margarita Rosales were identified as plaintiffs in 2008.  Garza and its employees were involved in discovery from the *Rosales* action prior to the filing of *Cruz*.  In the course of litigation, the parties have produced and reviewed "tens of thousands of pages of payroll and timekeeping documents." (Doc. 165 at 14.)  Given the amount of discovery conducted by the parties and the number of years that have passed since Plaintiffs' counsel filed the First Amended Complaint in *Doe* identifying El Rancho Farms as a defendant, it appears that the parties made informed decisions regarding the merits of their claims and defenses.  Consequently, this factor supports preliminary approval of the Settlement.

**F.      Experience and Views of Counsel**

As addressed above, Plaintiffs' counsel are experienced in class action litigation.  Based upon discovery conducted in the matter, Mr. Mallison asserts that the Settlement "is fair and reasonable given the circumstances of these cases and the strength and weaknesses of the various claims."  (Doc. 166 at 14, Mallison Decl. ¶ 39.)  Mr. Mallison believes "the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of the significant delay."  (*Id.* at 16, ¶ 47.)  Defendants agree that the Settlement "reflects a fair, reasonable, and adequate settlement of the Actions."  (Doc. 166-1 at 18, Settlement § III.L.10.)  These opinions of counsel are entitled to significant weight, and support approval of the settlement agreement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

**G.      Reaction of Class Members to the Proposed Settlement**

Plaintiffs have agreed to the terms of Settlement Agreement.  (Doc. 166-1 at 22.)  However, this factor shall be revisited prior to final approval of the Settlement because Class Members have not yet received notice of the Settlement terms.

**H.      Collusion between Negotiating Parties**

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960.  Plaintiffs assert: "The Settlement was reached after informed, arm's

16

length negotiations between the parties.  Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case." (Doc. 165 at 14.)  The parties utilized impartial mediators, and settlement negotiations took "numerous" all-day sessions to complete with the mediators.  (Doc. 166 at 12, Mallison Decl. ¶ 34.)  Accordingly, it appears the agreement is the product of non-collusive conduct, and this factor weighs in favor of preliminary approval of the Settlement.

**I.      Attorneys' Fees**

Class counsel may request attorneys' fees that total "no[] more than 33.33% ($766,667) of the Gross Settlement Amount. (Doc. 166-1 at 5, Settlement § III.A.2.)  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000).  Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007).  Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily.  The Court will determine the exact amount of the fee award upon application by Class Counsel for approval of fees.

**J.      Class Representative Enhancement**

The Settlement provides that "Plaintiffs will apply to the District Court for an award of up to $10,000 to each Plaintiff (Margarita Rosales, Angelica Rosales, Angel Lopez Cruz, and Angelica Alvarez)," to be paid from the Gross Settlement Amount.  (Doc. 166-1 at 5, Settlement § III.A.1.)  Incentive awards, or enhancements, for class representatives are not to be given routinely by the Court.  In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D.

173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted).  In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation."  *Staton*, 327 F.3d at 977.

Here, Plaintiffs seek the enhancement for "as compensation for their role as Class Representatives in the two cases."  (Doc. 166 at 13.)  However, there is no evidence related to the actual number of hours Plaintiffs spent working with Class Counsel on this action, or even an estimate of the number of meetings Plaintiffs had with Class Counsel.  Nevertheless, given the flexibility for an award *up to* $10,000 to the class representatives, approval of a class representative enhancement is appropriate.[5]

## APPROVAL OF CLASS NOTICE

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

---

[5] A class representative enhancement of $10,000 appears to be excessive.  *Wade v. Minatta Transp. Co*., 2012 U.S. Dist. LEXIS 12057 (N.D. Cal. Feb. 1, 2012) (finding the class representatives, who reported "they were involved in the case by interacting with counsel, participating in conferences, reviewing documents, and attending the day-long mediation that resulted in the settlement" failed to justify an incentive award of $10,000); *see also Alvarado v. Nederend*, 2011 U.S. Dist. LEXIS 52793 (E.D. Cal. Jan. 11, 2011) (awarding $7,500 to class representatives); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) (approving "incentive awards of $7,500 per class representative as compensation for their involvement in the case for the past five years, including appearing for depositions, assisting with written discovery, and working with Class Counsel to manage the settlement process").  In contrast, here, it is not clear that all the plaintiffs participated in the mediation.  Moreover, it is unclear why the *Cruz* plaintiffs should receive the same enhancement as the *Rosales* plaintiffs, given the fact that the only action taken in *Cruz* was to file the complaint.  Thus, Plaintiffs **SHALL** provide evidence support their request for the incentive awards, including the number of hours expended in tasks related to each action prior to the Final Approval and Fairness Hearing.

Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

**I.      Content of the Notice**

Plaintiff has submitted the proposed Notice, Claim Form, and Exclusion Form (collectively "Notice Packet").  Upon review of the Plaintiff's terms in the Notice Packet, the Court finds the content is adequate.  Plaintiffs provide information regarding the background of the action and claims asserted.  The Notice explains the terms and provisions of the Settlement, including the payments from the gross settlement fund.  (*See* Doc. 166-2.)  In addition, the Notice explains the rights and procedures to claim a share of the Settlement, object to the Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines.  (*Id.*)  Finally, the Notice Packet will provide an estimate of the Class Member's share based upon the number of months employed by Defendants, and explains the effect of the judgment and settlement.  (Doc. 166-3.)

**II.      Method and Administration of Notice Packet**

Following the entry of this Order, Defendants will give the Settlement Administrator the data it possesses for each class member, including: "the Class Member's name; and last-known mailing address and telephone number; the Class Member's Social Security number; and for the Class Period the Class Member's Months of Employment in a Covered Position working at El Rancho Farms." (Doc. 166-1 at 2 and 10, Settlement § III.I.2(a).)  Within ten days of receiving this data, the Settlement Administrator will mail the Notice Packets to all Class Members.  (*Id.* at 10, Settlement § III.I.2(b).) For any Notice Packet returned due to an incorrect address, the Settlement Administrator will search for a more current address and re-mail the Notice Packet.  (*Id.*, Settlement § III.I.2(c).)

Class members must submit and postmark their Claim Form to the Settlement Administrator within 45 days of the date on which the Notice Packets are mailed. (Doc. 166-1 at 11, Settlement § III.I.3.)  Similarly, Class Members who elect not to participate in the settlement will have 45 days to complete the Exclusion Form.  (*Id.* at 12, Settlement § III.I.4.)  If a Claim Form is completed improperly or "is deficient in one or more respects, the Settlement Administrator will return the Claim

Form within seven days of receipt with a notice explaining the deficiencies and stating that the Class Member will have ten days from the date of the deficiency notice to correct the deficiency and resubmit the Claim Form." (*Id.* at 11, Settlement § III.I.3(b)).

Class Members who wish to object to the Settlement must serve the parties and file with the Court a statement including "each specific reason in support of [his or her] objection and any legal support for each objection." (Doc. 166-2 at 12.) Any objection must be filed and served within 45 days of the mailing of the Notice Packet. (*Id.*; *see also* Doc. 166-1 at 12, Settlement § III.I.4(a)). The written statement must indicate whether the Class Member intends to appear at hearing. (*Id.*) Class Members will not be permitted to make objections at the Final Approval and Fairness Hearing unless they have submitted a timely written objection and notice of intention to appear. (*Id.*)

At least 14 days prior to the hearing for final approval of the Settlement, the Settlement Administrator will serve the parties and the Court with "a declaration due diligence setting forth its compliance with its obligations under th[e] Agreement." (Doc. 166-1 at 11, Settlement III.I.2(f)). The declaration shall include the number of Class Members to whom Notices were sent and the number of Class Members to whom the Notices were delivered.

### III.     Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date of the hearing for Final Approval of Class Settlement, and deadlines for Claim Forms, Exclusion Forms, and any opposition to the Settlement. Likewise, the Claim Form must be modified to include the relevant information, including the address and phone numbers of the Settlement Administrator. If Plaintiffs intend to issue a Spanish language translation of the Notice, they are reminded that this Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

### APPOINTMENT OF SETTLEMENT ADMINISTRATOR

The parties propose that the Court appoint Gilardi and Co., LLC ("Gilardi") to serve as the Settlement Administrator. (Doc. 165 at 20.) The Settlement explains:

> The Settlement Administrator's duties will include preparing, printing, and mailing the Class Notice Packet to all Class Members; conducting a National Change of Address search on any Class Notice Packet returned by the U.S. Postal Service as non-deliverable, and re-mailing the Class Notice Packet to the Class Member's new

address; receiving and reviewing for validity completed Claim Forms and Elections Not to Participate in Settlement; providing the Parties with weekly status reports about the delivery of Class Notice Packets and receipt of completed Claim Forms and Elections Not to Participate in Settlement; providing the parties with the received Claim Forms; calculating Settlement Shares; issuing the checks to effectuate the payments due under the Settlement; issuing the tax reports required under this Settlement; distributing any remaining funds as directed by the court; and otherwise administering the Settlement pursuant to this Agreement.

(Doc. 166-1 at 9-10, Settlement § III.H.)   In addition, the Settlement Administrator will have the final authority to result disputes regarding the calculation of a class member's settlement share.  (*Id.*)  For fees and expenses related to these responsibilities, Gilardi will receive up to $30,000 from the Gross Settlement Amount.  (Doc. 165 at 5.)  Based upon the recommendation and request of the parties, Gilardi is appointed as the Settlement Administrator.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement.  Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)).  Here, the proposed settlement agreement satisfies this test.

Accordingly, **IT IS HEREBY ORDERED**:

1.      The determination of the cy pres beneficiary is **NOT RIPE** for decision;

2.      Plaintiffs' request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined as follows:

> All persons who have been employed or jointly employed by farm labor contractor Garza Contracting, Inc. at El Rancho facilities between November 9, 2001 and June 11, 2014.

3.      Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

4. The proposed notice plan, as set forth above, is **APPROVED**;

5. Margarita Rosales, Lorena Corza, Angel Lopez Cruz, and Angelica Alvarez are **APPOINTED** the Class Representatives for the Settlement Class;

6. Stan Mallison and Hector Martinez are **APPOINTED** Class Counsel;

7. Gilardi and Co., LLC is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

8. The Class Representative enhancement requests for Plaintiffs are **GRANTED** preliminarily up to the amount of $10,000, subject to a petition and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. Class Counsel's request for fees of not to exceed 33 1/3% of the gross settlement amount and costs up to $50,000 is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

10. The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **February 27, 2015**;

11. Costs of settlement administration shall not exceed $30,000;

12. The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **December 1, 2014**;

13. The parties **SHALL** provide the Settlement Administrator with the Class Data no later than **December 12, 2014**;

14. The Settlement Administrator **SHALL** mail the approved Class Notice Packet no more than **December 22, 2014**;

15. Any Class Member who submits a timely and valid Claim Form on or before **February 13, 2015** SHALL receive a settlement share;

16. A class member who wishes to be excluded from settlement shall postmark the Opt-

22

Out Form no later than **February 13, 2015**;

17.  Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to Class Counsel no later than **February 13, 2015**;

18.  A Final Approval and Fairness Hearing is SET for **March 20, 2015**, at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California.  At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members.  The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

19.  Class Members may appear at the hearing on **March 20, 2015**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

20.  The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **February 13, 2015**;

21.  The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

22.  The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.


IT IS SO ORDERED.

Dated:   **November 26, 2014**             **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE